MACCUBBIN, *et al. vs.* CROMWELL.—June, 1828.

A widow has a right to ask in equity part of a fund in lieu of dower, where that fund has been produced by the sale of her husband's lands, which were subject to her dower, and increased, by being sold clear of that incumbrance with her approbation, and consent; and where she has assigned such a claim, her assignee will succeed to her rights.

An audit may be examined on appeal, although no exceptions were taken to it in chancery; and if the chancellor acted upon *improper testimony,* or mistook the principles of law, the audit will be reformed, or the decree reversed.

Where funds are in the court of chancery, and a party petitions to have them applied in discharge of his claim, it has long been the uniform practice of that court in this state, to receive the papers, on which the claim is founded, as *prima facie* evidence, and the chancellor acts on them accordingly, unless *the testimony is put in issue, and full proof required* by the opposite party.

This practice is founded in convenience, to save expense to suitors in that court, and ought not to be disregarded. It does not deprive the par-

ty of his right to have full proof, if he thinks proper to demand it. He
may file exceptions to the report of the auditor; and, even if the report
has been confirmed, upon petition the chancellor would direct it to be
opened, and strict legal proof would be required.

If exceptions are filed, the testimony is put in issue, and the chancellor
ought to require full proof; if he proceeds without strict legal evidence,
it would be error.

The report of a trustee appointed by the court of chancery, made under
oath, stating that ne had sold a tract of land "free and clear of all
right and title of dower of M, the widow of the deceased tenant in fee,
she having conveyed, for a valuable consideration, all her interest in the
premises to C," together with the deed of M to C, for her dower, is
sufficient *prima facie* evidence, to enable C to sustain a claim, by peti-
tion, for at least a less sum than the value of M's dower, to be paid out
of the proceeds of such land, which were in that court for distribution.

APPEAL from the Court of Chancery.   This case is sufficient-
ly stated by the appellant's counsel, and the judge who deliver-
ed the opinion of this court.

It was argued before BUCHANAN, Ch. J. and EARLE, MAR-
TIN, and ARCHER, J.

*R. B. Magruder,* for the Appellants, stated, that it appear-
ed by the record, that on the 2d of July 1810, a bill was filed
in the court of chancery by *Henry W. Dorsey* against *John
Cromwell,* (the now appellee,) *David Whelan,* and the chil-
dren and heirs at law of *Zachariah Maccubbin,* deceased, (the
present appellants,) to set aside a deed, charged to have been
fraudulently executed on the 15th of November 1809, by *Mac-
cubbin,* to *Whelan* and *Cromwell,* for all his real and personal
estate.   The bill stated that *Maccubbin,* at the time of execut-
ing the said deed, was indebted to the complainant in a large
sum of money—*Prayer,* that the deed might be decreed to be
null and void, and the estate of *Maccubbin* might be sold, &c.
The answers of *Whelan* and *Cromwell* admitted that the pro-
perty, real and *personal,* conveyed to them by *Maccubbin,* was
liable for the complainant's debt.   The answers of others of
the defendants, (by their guardian, being infants,) admitted the
debt due to the complainant, and the deed from their father to
*Whelan* and *Cromwell,* which they stated, was in trust for the
use and benefit of the children of their said father.   The an-
swers of *Whelan* and wife, (one of the heirs,) admitted the
facts stated in the bill, but say nothing as to *Whelan's* claim on

account of the widow's dower.    On the 14th of July 1812, the chancellor by his decree vacated the deed, and ordered a sale of the property therein mentioned, *not noticing the widow,* or her dower.    A trustee was appointed to make the sale    Sales were made and reported.  On the 15th of December 1815, *Cromwell, ( Whelan* being dead,) filed his petition to the chancellor, stating that on the 10th of June 1810, he, together with the said *Whelan,* believing it best for the interest of the children of *Maccubbin,* executed and delivered to *Margaret Maccubbin,* the widow of the deceased, their joint bond, conditioned for the payment of $400 *per annum,* in consideration of which she executed and delivered to them a release of her dower in all the real estate of which her husband died seized.    This release is exhibited.    The petition then stated that *Margaret Maccubbin* intermarried with *Joseph L. Fletcher,* and had since departed this life; and that *Whelan* was also dead.    That the petitioner and *Whelan* had paid large sums of money on account of the said bond, and that suits were then depending for the recovery of the balance due on the said bond—*Prayer,* that the auditor be directed to state an account between the estate of *Maccubbin* and the petitioner; and that the various sums paid by him and *Whelan* be repaid to them, &c.    To this petition there was no affidavit, nor proof of facts, nor any prayer for a *subpœna* to the trustee, or to the heirs.    On the 20th of July 1818, the trustee, appointed to make the sale, prayed by his petition to be discharged from his trust, stating that he had sold a part of the lands, &c.    He was discharged, and another trustee was appointed for the sale of the property which remained unsold, &c.    On the 3d of May 1824, *Cromwell* by his petition stated, that in March 1809, *Zachariah Maccubbin,* being seized in fee simple of a considerable tract of land, departed this life, leaving *Margaret Maccubbin* his widow.  That the said *Margaret,* being desirous of procuring an assignment of her dower, applied to the heirs of the said *Zachariah* therefor.    That the petitioner, with *David Whelan,* who had married one of the heirs of full age, gave the bond exhibited, to the said *Margaret,* for the purpose of securing to her the sum of $400 *per annum,* payable quarterly during her lifetime, a sum vastly inferior to the amount to which by law she was le-

gally entitled by way of dower—the estate of the said *Zacha-riah* having subsequently sold for $29,578.    The legal interest of which is $1,774 68—The amount due to the said *Marga-ret* for her dower of the said estate, is $591 56.    That the pe-titioner proceeded to pay the sum secured by the said bond for several years, until the said *Margaret* was married to *Joseph L. Fletcher*, and for some years afterwards also continued to pay, when the said *Fletcher* assigned the said bond to *Thomas Armstrong*, who brought a suit thereon, and obtained judg-ment against the petitioner to the amount of $1,500, with in-terest, &c.  A short copy of which judgment is exhibited.  That the said *Margaret* died on the 14th of December 1814, so that she was entitled to, and the petitioner has paid and is responsi-ble for, $1,850, with interest, &c.    That under the decree for the sale of the estate of *Zachariah Maccubbin*, a part thereof was sold by the former trustee, and the residue by the present trustee, which latter trustee holds in his hands funds sufficient to discharge the claim which the petitioner conceives he justly has against the said estate, for money paid by him in case of the said estate increasing its value, or diminishing the amount of incumbrances thereon.    *Prayer*, that the present trustee be directed to pay the claim of the petitioner, with interest; or that dower be assigned to the said *Margaret*, and the petitioner substituted for her to receive the same when so assigned; and for other relief, &c.  To this petition there was no affidavit, nor proof.

On the 7th of May 1824, Chancellor *Johnson* in his order, stated, "that the application was to allow to the petitioner the money the widow of *Zachariah Maccubbin* would have been authorised to receive in lieu of her dower in the lands sold under the decree, she (as is presumed,) having consented that the sale should be free of dower.  The petitioner claims to be placed in her situation, in consequence of having purchased the right of dower from her.   On examining the papers I find that on the 13th of May 1819, a report was made by the au-ditor, which was acted on by the chancellor the same day, leaving a large balance in the hands of the trustee.   On the 31st of December 1821, the report of the last trustee was con-firmed, and an order passed for the auditor to state an account,

appropriating the proceeds. I do not perceive that any thing has been done under that order, or on the sales of the first trustee since the 13th of May 1824."—*Ordered*, "That the au= ditor state accounts in regard to each trustee, in distributing the funds. In one account, he will allow to the petitioner the claim on account of dower; in the other, he will reject it." This order meant, of course, that the fact should be proved, that the widow had consented that the sale should be *free of dower*. The auditor on the 15th of July 1824, made a report, in which he stated, that by an order of the 29th of December 1813, he was directed to state an account with the original trustee for certain advances, he then reported, he had necessa= rily made to the heirs of the deceased. The materials for such an account were never furnished, and, therefore, the ba= lance of the account reported on the 13th of May 1819, was left unappropriated, and for the same reason continued so. That by another order of the 15th of December 1815, passed on the petition of the petitioner, then filed, the auditor was directed to state the claim of the petitioner and *David Whe= lan;* but on examining the papers, no statement of, or vouch= er for, the payment said to have been made to the deceased widow, were to be found, nor was the time of·the death of the widow, either shown or stated, and that order, of course, could not be executed. The present trustee's report represented, that the quantity of land sold ˙by him, had not been satisfac= torily ascertained; and no bill of his expenses accompanied it. The execution of the order of the 31st of December 1821 ˙was, therefore, postponed. Most of those difficulties still ex= ist; nevertheless, in obedience to the order of the 7th of May 1824, he has stated a continuation of the account with the first trustee, applying the unappropriated balance to the payment of the additional costs of this court, and then dividing the resi= due equally among the heirs of the deceased. And with the present trustee he has prepared an account, in which the pro= ceeds of his sale are applied to the payment of the costs of this court, and the amount of the petitioner's claim, stated from the petition, as of the day of sale, and the balance divided as aforesaid. And also another account, in which the claim of the petitioner is excluded, and the whole amount of the sale,

deducting the costs, is so divided. On the 27th of July 1825, the former trustee reported, on oath, "that the property, when offered at public sale, as stated in his former report, was put up and sold free and clear of all right and title of dower of *Margaret Maccubbin*, the widow of *Zachariah Maccubbin*, deceased—she the said *Margaret* having conveyed, for a valuable consideration, all her interest in the premises to *John Cromwell* and *David Whelan*, who consented to the said sale as stated."

Chancellor *Bland*, in his order of the 1st of August 1825, stated "that it now appears by the additional report of the trustee, that the whole estate of the late *Zachariah Maccubbin* was sold free and clear of the widow's right of dower, and consequently that *Cromwell* and *Whelan*, who purchased the widow's right of dower, are entitled to have their claim satisfied out of the whole proceeds of the sale. But on considering the nature of their claim, it appears, by the petition of *Cromwell*, filed on the 15th of December 1815, he and *Whelan* ask only 'that the various sums of money paid by them may be repaid, with interest.' And by the petition of *Cromwell*, filed on the 3d of May 1824, their claim is again presented, substantially in the same way; that is, 'for money paid in ease of the said estate.' And according to an informal estimate, made and laid before the chancellor by the auditor, it appears that the aggregate amount of the various sums which *Cromwell* and *Whelan* thus claim to have refunded and repaid to them, with interest, is much less than the amount to which they would be entitled as assignees of the widow, claiming the full amount, which she would have a right to demand in lieu of her dower. And since they have asked only for the lesser amount, or a mere reimbursement, as stated by the auditor, it is quite reasonable, as the case now stands, that it should be awarded to them; therefore, *Ordered*, that the auditor's report and statement of the 15th of July 1824, allowing the said claim of *Cromwell* and *Whelan*, be ratified and confirmed, and the trustee is directed to apply the proceeds accordingly," &c From this order the heirs of *Zachariah Maccubbin* appealed to this court.

It is contended, on the part of the appellants, 1. That the court of chancery had no jurisdiction. 2. If the court of chancery had jurisdiction, so as to sustain the petition and claim of the appellee, there is no evidence in the cause to support the claim. 3. There is a want of parties, and the decree or order appealed from should not have passed, until other proper parties had been first made.

1. The *first point.*—The court of chancery had no jurisdiction. 1st. Even if this had been an *original* proceeding *by the widow,* and not a *collateral* one, the jurisdiction might be doubted. *Cooper's Plead.* 135, 136, *(notes r, s, t, u.) Curtis v Curtis,* 2. *Bro. Ch. Rep.* 630, 632 2d. But as it is not original, but collateral, there *is no* power or jurisdiction in the court of chancery to permit even the *widow,* (if she asked it,) to come in upon this fund in this way, however *creditors* may do it. What is her situation at common law *before assignment* of dower? What is it *after* assignment? Could she apply *before,* or *after* assignment, for a *sale* of her interest, and to come in for the proceeds? If there was a mortgage of her interest, it might be different. Could an owner of a freehold, *not mortgaged,* or fettered by a trust, or by some other way, so as to give chancery jurisdiction, go into chancery against the remainder-man? There can be no right to go upon *a fund,* upon the general equity law. If there be any, it must be by positive statute. What provision have the acts of assembly made to enable the widow to go into chancery? The act of 1786, *ch.* 45, *s.* 6, reserves her right of dower *expressly.* The act of 1799, *ch.* 49, *s.* 6, allows dower to be sold, if the widow *consent in writing.* So also the act of 1816, *ch* 154, *s.* 10, 11, and 1819, ch. 183, *s.* 1, 2, if the *widow will consent.* These are the only instances in which a widow's interest may be disposed of, *provided she consent.* In all other cases, the law remains as it was, unaltered, and the court of chancery has no power over her right.

2. If the widow, or her assignee, could come into court *in this way,* (as creditors do, on a bill filed by one for all,) there is *no evidence* to support any claim to dower. *Pannell & Smith v The Farmers Bank of Maryland,* 7 *Harr. &*

*Johns.* 202. *Giese v Thomas, Ib.* 459, 460. It is insisted, 1st. That there is no proof that the pretended widow was ever married *at all* to the deceased. It is not mentioned in any of the petitions, nor was there any service of the petitions on any of the heirs, or any *subpœna* requiring their appearance. 2d. If married, she might have been an *alien.* 3d. There may have been a marriage settlement in bar of her dower. 4th. There is no proof that she ever executed the deed to *Cromwell* and *Whelan;* and if she did, there might have been proof, perhaps, that the bond was to be paid out of the *personal* estate conveyed by her husband to *Whelan* and *Cromwell.*

3. There is a want of necessary parties—material parties. *Cooper's Plead.* 21, 33, 34. 1 *Harr. Ch.* 77. *Fitzer vs. Fitzer,* 2 *Atk.* 514. *West v Randall,* 2 *Mason,* 190 to 196. *Cromwell v Owings,* 6 *Harr. & Johns.* 14. *Darne vs. Catlett, Ib.* 483. 1st. The *widow* (in her lifetime) ought to have been a party. *Jackson v Aspell,* 20 *Johns. Rep.* 413. *Jackson v Vanderheyden,* 17 *Johns. Rep.* 168, 169. *Cathcart v Lewis,* 1 *Ves. jr.* 463. 1 *Cruise Dig.* 159 *s.* 2. *Gilb. Ten.* 26. 2d. *Fletcher* (her husband) should have been a party. 3d. *Armstrong,* (the assignee,) should have been a party. *Coale v Mildred,* 3 *Harr. & Johns.* 278. Suppose a second mortgagee to file a bill, having bought out a *first* mortgagee, must not the *first* be made a party? Suppose an executor, *before* probate, to be made a party, yet *never* to take out letters, it is not sufficient without *actual* admininistration, because the account, if taken, might be "*overhaled again after the grant of letters.*" So in this case, *Fletcher* or *Armstrong* might come in. *Cooper's Plead.* 35. Why is the *executor,* as well as the heir of a mortgagee, made a party in a bill to redeem? "That the money shall return to the same fund out of which it came." *Cooper's Plead.* 37.

*Mayer* and *Meredith,* for the Appellee. 1. The court of chancery had no right to annul the deed from *Maccubbin,* to *Whelan* and *Cromwell,* except so far as related to the parties in the case who complained against the deed. It was a creditor's bill. *Rob. on Fraud. Convey.* 648 to 651. 1 *Fonbl.*

274, 278. The deed is binding on the party claiming under the grantor therein. *Jackson vs. Garnsey*, 16 *Johns. Rep.* 189. *Jones v Slubey*, 5 *Harr. & Johns.* 372 2 *Com. Dig.* tit *Chancery*, (3 M. 5.) 615. 4 *Com. Dig.* tit. *Fait*, (B. 4. B.) 278, (*note.*)

2. This is not a claim for dower; but if it was, the court of chancery exercises jurisdiction in cases of dower. 7 *Johns. Ch. Rep. (General Index,)* tit. *Jurisdiction of Chancery. Rathbone v Warren*, 10 *Johns. Rep.* 587. *Titus v Neilson*, 5 *Johns. Ch. Rep.* 452. *Swaine v. Perrine, Ib.* 482. *Everton v Tappen, Ib.* 497. 1 *Madd. Ch.* 196. The objection to the jurisdiction can only apply to the chancellor's order of the 1st of August 1825, allowing the claim of the appellee, &c. From this order the appeal has been taken. It is the common case of a creditor applying for payment of his debt, and to have a deed set aside. The court had jurisdiction of the case, and set aside the deed, and decreed the land to be sold to pay the creditor. The grantees in the deed before it was set aside, had entered into an arrangement with the widow for her dower interest in the land; and gave their bond to pay to her annually a certain sum of money. For the amount paid by them on the bond, and the amount for which they are answerable, (the land being sold,) they come into court, claiming to be paid. The claim is an equitable one, and it is not made as assignees of the widow for dower. But suppose it was, the court would have jurisdiction of the subject. 1 *Madd. Ch.* 196. But here the interest of the widow's dower comes incidentally into question. It must be admitted, that it is a proceeding *in rem. Tongue v Morton*, 6 *Harr. & Johns.* 21. *Smart v Wolf*, 3 *T. R.* 328. *The Monte Allegre*, 9 *Wheat* 616. *Titus v Neilson*, 5 *Johns. Ch. Rep.* 452. *Herbert v Wren*, 7 *Cranch* 376.

3. Where a party claims equity, he must do equity. 2 *Com. Dig.* tit. *Chancery*, (373) 594.

4. As to who ought to be made parties, they cited 2 *Madd. Ch.* 145. 8 *Com. Dig.* tit. *Chancery Pleading.* How could the widow be made a party when she was dead? No person could represent her. She had no interest in the fund arising from the sale of the land, having assigned the whole of her

interest away.   There was no occasion, therefore, for her being
made a party.   An assignee of dower cannot maintain an ac-
tion at law; but he may in a court of equity.   In *Coale v
Mildred*, 3 *Harr. & Johns.* 278, the assignor, and not the as-
signee, was made a party.   If the assignee had been a party it
would have been sufficient.   *Chambers v Goldwin*, 9 *Ves.* 269.
*Blake v Jones*, 3 *Anstr.* 651.   As the widow had assigned
her interest, it was not necessary, if she were alive, to make
her a party.   Nor was it necessary to make *Fletcher* or *Arm-
strong* parties.

5.  There was no exception to the auditor's report in the
court below, and it is too late to except to it in this court.   2
*Madd. Ch.* 507.   *Craven v Wright*, 2 *P. Wms.* 182.   *Minus
v Cox*, 5 *Johns. Ch. Rep.* 441.   *Wilkes v Rogers*, 6 *Johns.
Rep.* 566.   The *English* practice, where applicable, has been
adopted by our courts.   *Thompson v M'Kim*, 6 *Harr. &
Johns.* 302.

*Taney*, (Attorney-General,) in reply.   It has been said that
*Whelan* and *Cromwell* held the land as a gift; and although
void as to creditors, yet good as between the grantor and
grantee.   They were trustees for the benefit of the heirs of
*Maccubbin;* and there is no desire to deprive them of one
cent of what they have justly paid; but they, (or *Cromwell* as
the survivor,) should account for all sums which they had re-
ceived from the profits of the estate.   The object of the ap-
pellants is to have the audit opened.   *Cromwell* cannot be
considered as entitled to the whole surplus of the fund after
the payment of debts.   The deed of the 15th of November
1809, from *Maccubbin* to *Whelan* and *Cromwell*, was for the
whole of the grantor's real and personal estate; and the ques-
tion is, how did the grantees take under that deed?   Whether
they took the estate as a gift to them, or in trust for the heirs
of the grantor?   In their answers to the bill filed by *Dorsey*,
they say that they are not personally answerable for *Dorsey's*
debt, which they admitted to be due.   The answers of the
heirs stated that the deed was made in trust for their benefit.
In the petition of *Cromwell*, he does not deny what the heirs
had alleged in their answers; but stated that the bond to the

widow was given for the benefit of the heirs. In *Cromwell's* last petition he claims the whole surplus as grantee; but it he is not so entitled, then he claims under the assignment from the widow for her dower interest.

With respect to the jurisdiction of the court of chancery, in cases of dower, he insisted that the title to dower must be tried at law; but if there is an equitable right, then the court of chancery has jurisdiction. The general rule is, that the two courts have not concurrent jurisdiction in cases of dower. *Cooper's Plead.* 135, 136. 1 *Madd. Ch* 196, 197. *Curtis v Curtis,* 2 *Bro. Ch. Rep.* 630, 632. There has been no ground shown in this case for the interposition of a court of equity. There is no admission of the dower right. To give jurisdiction to the court of chancery, the right must be admitted—the absence of an objection, does not give jurisdiction. The parties here are not all of them of full age—some of them are infants, and this appears by the record. If the widow could not go into chancery claiming her dower, her assignee cannot. But suppose she could go into chancery for her dower, could she go against this fund? This fund was created by an act of the court, in its acknowledged jurisdiction. The trustee appointed by the court had no right, under the decree, to sell any thing but the estate of the deceased. He could not sell any right that the widow had in the land for her dower. This is not similar to cases arising under the act of 1786, *ch.* 45, and the supplements thereto, for selling the widow's dower. Yet it has been urged, that the land was sold clear of the widow's dower, and that the fund arising from that dower right has been brought into court. What right had the trustee to sell such right, or bring any such fund into court? The decree did not direct him to do so; nor was the decree for any such purpose. Out of what fund was the claim of the assignees of the dower right directed to be paid? It was out of the fund arising from the sale made of land, after the death of the widow. Not having set up her claim before her death, her assignees cannot come in and claim as purchasers of the dower right. Suppose they claimed as having relieved an incumbrance when the land was sold. Here was no incumbrance when the land was sold—the

widow was dead.   The surviving assignee does not and cannot claim to come in as a *creditor*, for he has not paid the amount of the bond given to the widow, and therefore he is no creditor.

As to the proof adduced in support of the decree.   The report of the auditor was not made upon any evidence produced to him, and it does not profess to have been so made.   It was only an experimental account stated by him.   But it has been said, that the objection to the auditor's report cannot be made now, not having been made in the court below.   It has been settled in this court, that an appellant appealing from a decree of the court of chancery, may except in this court to the report of the auditor, notwithstanding no exception was made in the court of chancery to that report.   *Ringgold v Ringgold*, 1 *Harr. & Gill*, 67.   *Pannell & Smith v The Farmers Bank of Maryland, et al.* 7 *Harr. & Johns.* 202.   *Giese v Thomas, Ib.* 460; and there are many other cases, in which the late and the present court of appeals have so decided.

There is no proof in the record that *Maccubbin* left a widow; nor is there any admission going to show that fact.   The petition of *Cromwell* is no evidence of the fact; and it is to be likened to a bill, where the defendants may use parts of it for certain purposes, but is not compelled to use the whole.   The certificate, (for it cannot be called a report,) of the first trustee, after he had relinquished his trust, cannot be received as evidence, that the land was sold, by consent, free of the widow's right to dower.   There is no evidence that the widow ever released her right to dower, and took the bond of *Whelan* and *Cromwell*, as has been alleged.   The copies of the bond, assignment and judgment, were not, of themselves, evidence, not having been proved and exhibited under a commission to take testimony.

On the question of proper parties, he referred to *Darne & Gassaway v Catlett*, 6 *Harr. & Johns.* 475.   *Cooper's Plead.* 32, 33.  *Jackson v Vanderheyden*, 17 *Johns. Rep.* 169.   *Jackson v Aspell*, 20 *Johns. Rep.* 413.   *Curtis v Curtis*, 2 *Bro. Ch. Rep.* 620, 629.   *Cathcart v Lewis*, 1 *Ves.* 463.   2 *Madd. Ch.* 145.

MARTIN, J. delivered the opinion of the Court. *Zachariah Maccubbin* on the 15th of November 1809, executed a deed to *David Whelan* and *John Cromwell.* for all his real and per·· sonal estate. At that time he was indebted to *Henry W. Dor-· sey* in a large sum of money. After the death of *Maccubbin,* a bill was filed by *Dorsey,* to set aside this deed as fraudulent, and a decree was obtained vacating the deed, and directing the lands to be sold for the payment of *Maccubbin's* debts. The lands were sold under the decree, and the proceeds brought into the court of chancery, and a surplus remained after the debts were paid. The widow of *Maccubbin* was entitled to dower in the lands sold.

It is alleged by *Cromwell* that the widow, on the 14th of June 1810, made an assignment of her dower to him and *Whelan,* in consideration of a bond passed by them to her, to pay $400 *per annum,* during her life. That she afterwards in-· termarried with *Joseph L. Fletcher,* and died on the 14th of December 1814. That several payments were made on the bond before the 13th of June 1814, when it was assigned to *Thomas Armstrong,* who obtained a judgment at law upon it. That the lands were sold by the trustee clear of dower, *Cromwell* and *Whelan* having consented to it, and that the heirs of *Maccubbin* were benefited by the contract made with the widow, the sum to be paid her being considerably less than she would have been entitled to receive in lieu of her dower.

*Cromwell* claims to stand in the place of the widow in equi-· ty, and to be reimbursed the money he has actually paid, and that for which he is answerable under the judgment. It must be admitted, if he, as assignee of the widow, would be en-· titled to receive the *whole* sum that ought to be allotted to her, his equity is not lessened, by claiming only a part of it.

Three objections have been relied on in the argument to re-· verse this decree. The *first* is, that the court of chancery had no jurisdiction in the case. In examining this objection, it is proper to remark, that the question is *not,* whether a court of chancery has jurisdiction to assign dower, where no impediment or obstacle appears to the recovery at law; but whether a widow has a right to ask, in a court of equity, part

of a fund in lieu of her dower, where that fund has been pro-
duced by the sale of her husband's lands which were subject
to her dower, and increased by being sold, clear of that in-
cumbrance, with her approbation and consent?

Why should she not have this relief upon general princi-
ples of equity, without invoking the aid of authorities, or the
practice of chancery to support it? She has relinquished her
right of dower in the lands of her husband, to which she was
entitled by law, and being freed from that incumbrance, the
proceeds of the sale have been greatly increased. The heirs
were bound by her claim; and whether it is satisfied out of the
lands, or the proceeds of those lands, seems to be a matter of
no import to them. If the fund was increased by the relin-
quishment of dower, their portion was not diminished; and
indeed, it cannot be overlooked, that one great object in selling
lands in this way, is to produce a better price, and thereby bene-
fit the estate. The case of *Herbert, and others, v. Wier and
others*, reported in 7 *Cranch* 370, although not exactly similar
to the one before us, bears, in many of its features, a strong
resemblance to it. In that case there was a decree that the whole
estate of *Lewis Hipkins*, deceased, should be sold, and the
money brought into court. The estate was sold under the
decree, and a memorandum was made on the deed of convey-
ance, that it was subject to dower. The purchaser conveyed
to the trustees of *Fendall*, for whom he bought the land, and
those trustees sold and conveyed to *Deane* the defendant. In
the deed to *Deane* was a covenant to indemnify him against
the claim of dower. The widow of *Hipkins*, and her second
husband *Wier*, applied to the court of chancery, praying that
dower may be assigned to her in the lands of her first hus-
band, or that a just equivalent in money may be decreed her
in lieu thereof. *Deane* consented, if the court would decree
dower in the lands, he would give an equivalent in money in
lieu thereof. There, as in this case, it was contended, a
court of chancery had no jurisdiction, and could not grant re-
lief. To which it was answered, the land being sold subject to
dower, and the deed to *Deane* having a covenant to indemnify
him against dower, a court of chancery would call the parties
before it, and decree money in lieu of land, when the purchaser

and widow consented to it. That if the purchaser paid a sum of money in lieu of dower, it placed him in the same situation as if he had purchased clear of dower. The court determined that the widow should receive, not a sum in gross in lieu of her dower, but that one third of the purchase money should be set apart, and that she should receive the interest on it, during her life This is a strong authority, so far as it relates to the jurisdiction of the court. In *Tabell v Tabell and others*, 1 *Johns. Ch. Rep.* 45, *William Tabell* and wife entered into a mortgage of his property to *Thomas Gardner*, to secure the payment of a debt. The mortgaged premises were sold under a decree, the widow appearing and submitting, the debt was paid, and a surplus of the purchase money brought into court. The chancellor decreed, the widow was entitled to the use of one third of the purchase money, after satisfying the mortgaged debt, as her equitable dower, the same arising out of the real estate, in which she would have been entitled at law, subject to the mortgage. *Titus v Neilson and others*, 5 *Johns. Ch. Rep.* 452. From an examination of the records in the court of chancery, it appears that court has uniformly assumed jurisdiction in cases like the present, and it is thought, not a case is to be found where relief has been refused to the widow, when the land had been sold clear of dower, with her consent. A sum in gross is sometimes allowed; but whether that practice is in analogy to the act of 1799, or upon general principles of equity, cannot affect this case. The real estate of *Peter Cassenave* was decreed to be sold for the payment of his debts. The trustee, without proper authority, sold the lands clear of dower. The widow, by a petition to the chancellor, agreed to relinquish her right of dower, if the chancellor would decree her a sum out of the purchase money in lieu thereof. This petition was granted, and a decree passed in 1801, allowing her a sum in gross. The chancellor observes in his decree, this is the first case, in his recollection, where it was left to him to *ascertain the proportion* a widow is entitled to, on account of her right of dower, of the money arising from the sale of the whole interest in the lands of which her husband died seized in fee, having a legal title. Whether the widow is to be allowed a sum in gross, or receive interest on

one third of the purchase money, during her life, cannot affect the equity of this decree, because the sum decreed to be paid, is less than she would be entitled to receive in either way.

The *second* objection is, if the court of chancery had jurisdiction, there is no evidence in the cause to support the claim.

If *Cromwell* is prevented by strict and rigid rules of law from obtaining relief in the manner directed by the decree, it must be admitted to be a cause of regret, for so far as this record speaks, it appears justice has been administered to all the parties concerned. The conduct of *Cromwell* and *Whelan,* proves they were actuated by the purest motives. Although the deed was made *absolute* to them, they have considered themselves only as trustees for the heirs of the grantor, and the contract made with the widow is certainly beneficial to those heirs. They require nothing for the trouble this trust must have caused them, but only to be reimbursed and saved harmless for money laid out for the advantage of the estate.

If we are to require in this case the same evidence that would be necessary in a court of law, or upon an original bill in chancery, the decree must be reversed, for there is scarcely a fact, on which the petitioner relies to sustain his claim, proved by legal evidence. If the assignment *had been denied,* its execution ought to have been proved by the witnesses to it, and a short copy of a judgment could not supersede the necessity of showing a full copy of the record. But is the same full proof required under the circumstances of this case? The funds were in the court of chancery, and *Cromwell* prayed to have a part of those funds applied to the discharge of his claim. It has long been the uniform practice in the court of chancery of this state, in applications of this kind, to receive the papers on which the claim is founded, as *prima facie* evidence, and the chancellor will act on them accordingly, unless the *testimony is put in issue, and full proof is required* by the opposite party. This practice is founded in convenience, and to save expense to suitors in that court, and ought not to be disregarded by us. Who is to be injured by it? It does not deprive the party of his right to have full proof, if he thinks proper to demand it He may file exceptions to the report of the auditor, and even if the report

had been confirmed, upon petition, the chancellor would direct it to be opened, and strict legal proof would be required. The instrument of writing offered as evidence of the assignment, is acknowledged before two justices of the peace, and the second report of the trustee is verified on oath.

It has been contended this question is not now open for consideration; and although it might be proper to sanction this practice in chancery, so fraught with advantage and convenience to suitors in that court, if this was the first time it had been presented to us, that it is now too late, for it has been settled, by decisions of this court, that upon an appeal, the whole audit may be examined, and if the chancellor has acted upon insufficient testimony, the decree must be reversed. It is not perceived that these decisions can affect the case now before us. Admit, that upon an appeal the whole audit may be examined, it surely will not be said the decree must be reversed, unless there has been error in the proceedings. If the chancellor is justified by long usage and practice in his court, to act on evidence *prima facie*, which is there considered as not to require full proof, unless it is demanded by the parties interested, it is difficult to be imagined, how it can be imputed to him as error. If it is not error in chancery it cannot be error in this court, and if it was correct there, it must be sanctioned by this court. No decision, we think, can be found, to impugn this doctrine. It has been determined, as before observed, that an audit may be examined in this court, although no exceptions were filed in chancery to it; and if the chancellor has acted upon improper testimony, or mistaken the principles of law, the audit would be reformed, or the decree be reversed. But that still leaves open the question, what is proper testimony? According to the rule in chancery, the testimony afforded by this record is proper and deemed sufficient, unless it is objected to. If exceptions are filed, the testimony is put in issue, and the chancellor ought to require full proof. If he *then* proceeds without strict legal evidence, it would be error, and could be taken advantage of in this court. Such was the decision in the case of *Pannell & Smith vs. The Farmers Bank of Maryland.* All the facts, on which that case rested, do not appear either in the record, or the case as reported in *Harris &*

*Johnson.* The bill was filed by the *Farmers Bank of Maryland,* *Robert H. Goldsborough* and *Alexander C. Magruder,* against Mrs. *Hanson,* as administratrix of *Alexander Hanson. Goldsborough* and *Magruder,* as the mortgagees of an unrecorded mortgage, claimed a preference over the other creditors in the funds arising from the mortgaged premises. When the funds were about to be distributed, this preference was resisted by the other creditors of *Hanson,* and *Pannell* and *Smith* exhibited, as the evidence of their debts, promissory notes, with affidavits, that no part had been received. The chancellor directed two audits to be made; the one applying all the proceeds to the complainants' debt; the other applying them equally among the creditors. To the second audit, the complainants filed several exceptions, one of which was, *that the debts were not proved by legal evidence.* This exception put the testimony in issue, and having done so, the chancellor ought to have required strict legal proof before he allowed any part of those claims. The exception, however, so far as it related to the sufficiency of proof, was disregarded, and this court was certainly correct in deciding, *under* the circumstances of the case, there was no legal evidence of the appellant's debts. Not because the chancellor might not have allowed them upon the evidence of the notes with the probates on them, *if there had been no objection to that testimony;* but because the testimony was put in issue, by excepting to it, and *that* made it necessary to prove the execution of the notes.

It has been said, if the widow was entitled to a sum of money in lieu of her dower, it ought to have been paid out of the money arising from the first sale of the lands, because those lands alone were sold clear of dower. The sum allowed *Cromwell* by the decree is $1,850, without interest. The proceeds of the first sale are $24,763. To set apart one third of that sum, the widow to receive the interest on it during her life, would be considerably more than the sum allowed to *Cromwell.* After paying the debts of *Maccubbin,* there remained a balance from the first sale of $16,219 42, which was ordered to be paid over to the heirs. If then the heirs received the money, that ought to have been paid to the

widow, upon every principle of equity she would be entitled to have her portion out of the funds afterwards brought into chancery from the sale of the residue of the lands.

We think the *third* objection relied on—the want of proper parties—cannot avail the appellants; and the decree is affirmed, with costs.

DECREE AFFIRMED.