(Decided October 7th 1864 )

JACKSON, BROTHER & CO. *vs.* ARTHUR J. WEST ET AL.

ACCOUNT, PROOF OF.—The oath of a member of a firm, together with the oath of one who was both clerk and bookkeeper of the firm, made and certified according to the requirements of the Act of 1785, ch. 46, sec. 4, are *prima facie* sufficient to establish an account according to the practice in this State.

Where *full proof* of an account is required by exceptions filed, evidence by the clerk and bookkeeper of a firm that the articles charged in an account were sold and delivered at the prices therein stated is sufficient.

FEME COVERT:—POWER OF TO BIND HER SEPARATE ESTATE IN THE HANDS OF TRUSTEES. A deed of trust conveyed certain lands to trustees "for the sole and separate use and benefit of "E. W., (a *feme covert,*) and her heirs," &c.—"with power to the said E. W. to sell the whole or any part thereof, with the consent of the trustees, and the proceeds of such sales to be invested for the purposes of the trust, or disposed of as said E. W. shall direct."—HELD :

That there can be no question of the power of E. W. to charge her separate estate in the hands of the trustees with the payment of an account contracted for necessaries, where there is evidence clearly showing that such was her intention.

APPEAL from the Equity side of the Circuit Court for Prince George's County.

The bill in this case was filed on the 31st of March 1858, by certain of the heirs at law, and the administrator of Eleanor West, for an account from Wm. D. Bowie and

and Thomas H. Claggett, trustees of the estate of Arthur P. West, and to vacate the trust, which it alleges had accomplished its purpose, and for the sale for the purpose of distribution of certain real estate of Eleanor West, and of real estate in the hands of said trustees remaining unsold.

The bill states: That on the first day of May, in the year eighteen hundred and forty-four, Arthur P. West and Eleanor West, his wife, (the father and mother of the three first named complainants) who then resided in Prince George's County, by their deed of that date, duly executed and acknowledged, for the consideration therein éxpressed, conveyed to William D. Bowie, of Prince George's County, and Thomas H. Claggett, of Leesburg, in the State of Virginia, as trustees, a large and váluable real estate lying and being in Prince George's County, and particularly described in said deed, in trust for the sole and separate use of the said Eleanor West and her heirs, free from the control of the said Arthür P. West, and to be in no wise responsible for the debts he then owed or might thereafter contract, with power to the said Eleanor West, with the consent of the said trustees, to sell the whole or any part of the said real estate, and to execute the proper and necessary papers for the conveyance thereof, and the proceeds of sale to be invested for the purposes of said trust, or as the said Eleanor West should direct, and with the further power to the said Eleanor West, to dispose of the said real estate or any part thereof by last will and testament, or other writing in the nature thereof, executed in accordance to law, and in default of any such sale or disposition, in trust, after the death of the said Eleanor West, for the use and benefit of her heirs.

The bill further states, that on the twenty-ninth day of June, of the same year, the said Arthur P. West, being then possessed of a large and valuable personal estate,

did, by a deed of that date, for the consideration therein mentioned, convey the same to the said William D. Bowie and Thomas H. Claggett, in trust, to pay and satisfy all the just debts of the said Arthur P. West, and to indemnify and secure the said trustees for all loans, liabilities incurred for and on account of the said Arthur P. West, and for all costs which had been or might be incurred by them in the execution of their trust, and the residue of said property and all moneys arising from the sale of any part thereof, after the payment of the just debts and liabilities and expenses as aforesaid, to be held by them, for the sole and separate use and benefit of the said Eleanor West, her executors, administrators and assigns, free from the debts or liabilities of her said husband, which were then due or might thereafter be contracted, and free from his control, and subject to the same powers and provisions by sale or last will and testament, as are before stated as to the said real estate: copies of which said two deeds of trust as above detailed are filed with the said bill of complaint as the complainants's exhibits A and B, and prayed in said bill to be taken as parts thereof.

The bill further states, that after the execution of said deeds, the said trustees took possession of the said real and personal estate, and from time to time sold portions thereof, under the direction of the Court, for the purposes of said trust, and have now disposed of more of said property than is necessary to discharge all the debts and liabilities against said trust estate; and that the said complainants are informed that the said trustees are now prepared to exhibit a full and final account of said trust estate, and to pay over to the parties entitled to receive the same, any balance of moneys in their hands from the sales of said property, and the residue of said property now in their hands, and are anxious to be discharged from said trust.

And the said bill further states, that the said Eleanor West departed this life some time in the year eighteen hundred and fifty-six, intestate and without having disposed of any part of the said trust estate, leaving Arthur J. West, Thomas S. West, and Virginia O. West, the three first named complainants in the bill, and Biddell L. West and Francis O. M. West, her only children, (the latter of whom has since departed this life, leaving a widow, Helen West, and Helen M. West and Benjamin O. West, his only children,) and that letters of administration on her personal estate have been duly granted by the Orphans Court for Washington City, where the said Eleanor West resided at the time of her death, to John H. Strider, who has duly qualified as such; and further states, that a large portion of the said real estate has not been disposed of, and it will not be necessary to dispose of it for the purposes of said trust: that is to say, about three hundred and fifty acres thereof, known as the *Pocosin;* and that the said real estate, in its present condition, is entirely unproductive and not capable of division among the parties entitled thereto, but it would be greatly to the interest and advantage of all the said parties to have the same sold under the direction of this Court.

The bill then prays that a decree may pass vacating and annulling said trust and discharging said trustees therefrom, after they shall have exhibited in said Court a full and particular account of the sales of such portion of said trust estate as they may have sold, with the application of the moneys arising therefrom, and requiring the said trustees to hand over to the parties entitled thereto, any balance of the money in their hands from the sales of said property which may be unappropriated, with the residue of said trust estate now in their hands; and also for a decree for the sale of said real estate for division among the parties entitled to the same.

On the 1st Monday of April 1859 the trustees filed their joint answer to said bill, admitting that the purposes of the trust had been accomplished by the payment of the debts of Arthur J. West, and that by the death of the said Eleanor, the residue in their hands was payable to her administrator, or her heirs at law; setting forth a particular account of their receipts and disbursements; and consenting that the trust be vacated.

While the cause was so progressing, to wit: on the 1st of November 1858, the appellants, Jackson, Brother & Co., filed their petition, stating that Mrs. Eleanor West, in her lifetime, was indebted to them in the sum of $1,024.12, besides interest, contracted from the 13th November 1852, to 1st July 1856, and praying that before distribution of the funds in the hands of the trustees, they should be ordered to pay this claim out of the same, or that the proceeds of the property sought to be sold under the proceedings in this cause, should be applied to such purpose before distribution.

The trustees filed separate answers to this petition, denying their responsibility for said account, or that the funds in their hands should be applied to its payment.

John H. Strider, the administrator, also filed an answer to the petition resisting the payment of the claim of the petitioners, principally on the ground of *laches* on the part of the claimants in failing to present the account to him before the estate in his hands was closed, and pleading *plene administravit*.

Several commissions were issued to take testimony, which were duly returned.

Joseph C. Jackson, a witness produced on the part of said petitioners, testified as follows: "I have been clerk to the firm of Jackson, Bros. & Co., between twelve and thirteen years, and during that time have partially attended to the books. To the best of my knowledge and recollection, the account shown me is correct, and

the articles therein charged I believe to have been sold and delivered at the prices marked; many of the goods I put up and delivered myself.''

William D. Bowie, one of the trustees, also produced and examined as a witness by the petitioners, testified: "That he and Thomas H. Claggett were appointed trustees under a deed of trust from Arthur P. West, and that he had paid several accounts incurred in the maintenance and support of Mrs. Eleanor West and her family,—some with her knowledge and consent and some by her request; that he paid B. L. Jackson & Bro., December 1st 1848, forty dollars, for Mrs. E. West, at her request; that he also paid Burgess & Wilson, on the same account, one hundred and thirty-three dollars and six cents, for Mrs. West's support, at her request, on the 10th of November 1852, as will appear from reference to No. 27 of trustee's vouchers; that he paid B. L. Jackson & Bro., $788.99, and Jackson, Bro. & Co., $111.01, on November 10th 1852, for the support of Mrs. Eleanor West and family, and at her request, as will appear by receipt of that date filed among the vouchers of said trustee; that he also paid Hooe, Bro. & Co., for the support of Mrs. West and family, $395.23, on November 10th 1852, at her request, as will appear by an examination of No. 29 of trustee's vouchers; that he also paid Hooe, Bro. & Co., for the support of Mrs. West and family, at her request, on the 15th of December 1856, as will appear by No. 47 of trustee's vouchers, fifty dollars; that he had also advanced Mrs. West, for her support and that of her family, at sundry times, four hundred dollars, as will appear by trustee's vouchers numbered 33, 34, 35, 36, 40 and 41; that he also paid B. L. Jackson, Bro. & Co., May 21st 1856, for the support of Mrs. West and family, $288.03, as will appear by trustee's vouchers marked E, F, G, and H; and that he also paid Albert B. Berry, three hundred dollars, for the support

of Mrs. West and family, May 22d 1856, at her request. That these were all the payments made by him that he remembered, and that he was never Mrs. West's agent, but paid these claims for Mrs. West at her instance and request."

The proceedings were afterwards referred to the auditor of the Court, who stated and reported two accounts: Account *A*, showing trust funds in the hands of the trustees to the amount of $2,230.10, and applying a part of that sum to the payment in full of the account of the claimants; and account *B*, showing the trust fund to be only $1,164.78, and applying that sum to the payment of said claimant in part. To each of these accounts and the report of the auditor, exceptions were filed by the heirs at law, and the administrator of Mrs. West, and the administrator also excepted to the sufficiency of the proof of the claim of the petitioners, from the evidence of Joseph C. Jackson. The cause was set down for final hearing as well as to the claim of the petitioners as on the prayer for general relief, and on the 10th of April 1861, the Court (CRAIN, J.,) by its decree, sustained the exceptions, and dismissed the petition of Jackson, Bro. & Co., who thereupon prosecuted this appeal.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.*

*Thos. G. Pratt* and *Daniel Clark*, for the appellants.

I. 1st. Under the deed of trust, conveying the personal estate of Arthur P. West, the trustees took an absolute estate in the said property, which was not determined by the death of Mrs. West. The trust remained a continuing or subsisting one, until they executed the duties and obligations thereby imposed, and before the trustees had fully paid and satisfied all the debts of the said Arthur P. West, no estate in the residue vested in the said Eleanor

West, her executors or administrators. The appellants, who became the creditors of the said Eleanor West subsequent to the execution of the said deed of trust, had no right to proceed against the personal estate conveyed by the said deed of trust, prior to the discharge by the trustees of the first and second objects of the trust, and before the transfer of the residue of the said personal estate, which could only vest, after the execution of the objects of the deed was fully completed, in the said Eleanor West and her executors. The personal property, therefore, was not the primary fund to which the appellants were bound to resort, and its liability in any event was contingent upon a residue being ascertained to exist after the payment of the debts of A. P. West. This residue was not ascertained in the lifetime of Mrs. West, was not known at the time of the filing of the appellants' petition, and was first ascertained from the answer of the trustees and the auditor's report, based on the said answer and accompanying accounts. It may be doubted, therefore, whether any estate in said personal property ever vested in Mrs. West, which would render it liable for the appellants' claim. *Spessard vs. Rohrer*, 9 *Gill*, 262. *Hanson vs. Worthington*, 12 *Md. Rep.*, 439. *Ware vs. Richardson*, 3 *Md. Rep.*, 505. *Hill on Trustees, p.* 379. *Lewin on Trusts*, 250, 256, 643, 646. *Fonbl. Eq.* (3rd Am. Ed.) 320, 636.

2nd. By the deed of trust of the real estate, the legal estate in fee was vested in the trustees, and Mrs. West took an equitable estate in fee, which said real estate and the proceeds derived from the sale of any part thereof, are liable by virtue of the said deed of trust for the payment of the claim of the appellants. *Ware vs. Richardson*, 3 *Md. Rep.* 505. *Murray vs. Barlee*, 3 *My. & Keen*, 290. *Hulme vs. Tenant*, 1 *White & Tudor Leading Cases in Equity*, 324 *marginal page*, and cases referred to in notes. *Price & Nesbit vs. Bigham Exec.*, 7 *H. & J.*, 296. *Anony-*

*mous,* 18 *Ves.,* 258. *Heatly vs. Thomas,* 15 *Ves.,* 596. *Jacques vs. M. E. Church,* 17 *Johns.,* 548. *N. Am. Coal Co. vs. Dyett et al.,* 7 *Paige,* 1. *Leaycraft vs. Hedden,* 3 *Gr. Ch. Rep.,* 512. *Koontz vs. Nabb,* 16 *Md. Rep.,* 549. *Cooke vs. Husbands,* 11 *Md. Rep.,* 492.

3rd. Where a fund is in a Court of Equity for distribution, and a claimant comes in by petition and asks for the payment of his claim out of the same before distribution, a Court of Equity will not refuse relief or force the party to pursue his remedy elsewhere, but will decree the payment thereof if the claim is shown to be *bona fide* due, and the refusal of the prayer works a wrong and injustice to the claimant. *Hays vs. Miles,* 9 *G. & J.,* 193. *Baltzell vs. Foss,* 1 *H. & G.,* 504. *Balch vs. Zentmeyer,* 11 *G. & J.,* 267. *Duvall vs. Farmers Bank of Md.,* 4 *G. & J.,* 293.

II. It will be further argued, that after the petition of the appellant had been set down for final hearing by agreement of counsel, and the Court had passed the order of July 9th 1860, there was error in the order passed on the 13th of November 1860:

1st. Because the said John H. Strider, administrator, being a party to the cause, he was already in Court, and had, by his counsel, consented to the final hearing, and the application came too late. *Balch vs. Zentmeyer,* 11 *G. & J.,* 267. *Duvall vs. Farmers Bank of Md.,* 4 *G. & J.,* 293.

2nd. Because the answer of the trustees showing that they had passed over to John H. Strider the entire residue of the personal property, and the appellants not seeking the payment of their claim out of the personal estate, but out of the real estate or the proceeds of the sale of the real estate, which did not vest in the administrator, the said John A. Strider had no right to contest the payment of their claim. *David et al. vs. Grahame,* 2 *H. & G.,* 94.

*State vs. Nicols,* 10 *G. & J.,* 27. *Conner vs. Ogle,* 4 *Md. Ch. Dec.,* 425.

III. Upon the exceptions filed to the auditor's report, and the admissibility of the evidence of Joseph C. Jackson, the appellants will insist:

1st. That the said John H. Strider had no right to except to the same.

2nd. That the claim of the appellants is proved according to law. *Alex. Ch. Pr.,* 129. *Strike vs. McDonald,* 2. *H. & G.,* 234. *Mackubin vs. Cromwell, Ibid.,* 458. *Kent vs. Waters,* 18 *Md. Rep.,* 53. In relation to the proof of open accounts, see 1798, ch. 101, sub-chs. 8 and 9 *Alex. Ch. Pr.,* 132, 133. 1785, ch. 46, sec. 4. *Code,* p. 637, sec. 92. *Code,* p. 284, sec. 42.

3rd. That they are entitled in this case to be paid from the trust estate in the hands of the trustees.

4th. That the said John H. Strider cannot plead the statute of limitations, nor is their claim barred by limitations.

*Frank H. Stockett,* for the appellees.

The appellees will insist that the decree of the Court in this respect should be sustained.

1st. Because of the failure to prove said claim, the testimony of Jos. C. Jackson being manifestly insufficient for this purpose, and inadmissible as well for want of particularity as to the items of the account, as for want of knowledge of the sale, delivery, and prices of the articles charged in the account. *Salmon vs. Fenour,* 6 *G. & J.,* 60. *Owings vs. Low,* 5 *G. & J.,* 134. *Lewis vs. Kramer & Rahn,* 3 *Md. Rep.,* 265.

2nd. Because of the neglect of claimants in not presenting their claim to the administrator before the estate in his hands was closed, and the assets distributed, though due notice according to law had been given.

3rd. Because said account was barred by the statute of limitations, which was pleaded to the same.

4th. Because said claimants are not entitled to recover of the trust funds in the hands of the trustees: for Wm. D. Bowie proves that before their account was contracted, he notified them that the trust estate would not be responsible for any future account contracted by Mrs. West, but that if they sold to her, it must be on her own credit.

5th. The claim of the appellants in this case is an account contracted by, and charged to a *feme covert*, and is therefore null and void in courts of law as well as in equity. *Benton vs. Marshall*, 4 *Gill*, 487. *Norris vs. Lantz*, 18 *Md.*, 269. *Coon vs. Brook*, 21 *Barb* 6. *Dorrance vs. Scott*, 3 *Whart.*, 309. *Vance vs. Wells*, 6 *Ala.*, 737. Nor could she have been compelled to pay the same in equity, unless the obligation sought to be enforced, presented on its face evidence of her intent to charge her estate; or there be proof of such intent *aliunde*. *Koontz vs. Nabb*, 16 *Md. Rep.*, 554. *Neve vs. Hollands*, 83 *Eng. C. L. Rep.*, 262. *Griffith vs. Clarke*, 18 *Md. Rep.*, 457. A married woman has no power over her separate estate, but such as is specially given her, and this can only be exercised in the mode prescribed. *Tarr vs. Williams*, 4 *Md. Ch. Dec.*, 68. *Miller & Mayhew vs. Williamson*, 5 *Md. Rep.*, 220. *Williams vs. Donaldson*, 4 *Md. Ch. Dec.*, 417. 65 *Law Lib.* 370, &c. *Cooke vs. Husbands*, 11 *Md. Rep.*, 492. *Conn. vs. Conn.* 4 *Md. Ch. Dec.*, 212. *Tiernan vs. Poor*, 1 *G. & J.*, 229.

6th. The claims of the appellants were not properly proved under the Act of 1785, because the affidavits were not made within twelve months. Where full proof is required, the affidavits are not sufficient, unless the witnesses be dead, or beyond reach of the process of the Court The parties resisting the claim would have the right of cross-examining the witness under a commission. The claim sought to be established is against a fund arising from a conversion of the real estate. It is against

11    v. 22.

personalty. *Dalrymple vs. Taneyhill*, 4 *Md. Ch. Dec.*, 174. *Betts et al. vs. Wirt et al.*, 3 *Md. Ch. Dec.*, 113. *Peacock vs. Pembroke*, 4 *Md. Rep.*, 280.

BARTOL, J., delivered the opinion of this Court.

The fund in Court, out of which the appellants claim to be paid the sum of $1,024.12, and interest, being the amount of their account for necessaries furnished to Mrs. Eleanor West, from November 1852 to July 1856, has come to the hands of the trustees from the sale of the real estate of Mrs. Eleanor West, conveyed by deed of the first of May 1844, executed by A. P. West and wife.

The right of the appellants to the relief prayed in their petition, depends upon the decision of two questions: 1st. Whether their claim is proved according to law? 2nd. Whether, if proved, the trust fund in Court may be charged with its payment?

1st. As to the proof of the account: This consists of the oath of William B. Jackson, one of the firm of Jackson, Brothers & Co., and also the oath of Joseph C. Jackson, "a disinterested, credible witness," the clerk and bookkeeper of the appellants, made, and certified according to the requirements of the 4th sec. of the Act of 1785, ch. 46. This is sufficient *prima facie* proof to establish the account, according to the practice in this State. *Strike vs. McDonald*, 2 *H. & G.*, 234. *McCubbin vs. Cromwell*, 2 *H. & G.*, 458. *Alexander's Ch. Pr.*, 132. But, if the exceptions filed against this claim are to be considered as requiring *full proof*, we think the evidence taken under the commission has supplied as full proof as such a claim is ordinarily susceptible of. In our opinion, the testimony of Joseph C. Jackson, the clerk of the appellants, given in answer to the 4th and 5th interrogatories, is sufficient to establish the sale and delivery of the articles charged in the account, at the prices therein stated.

One of the exceptions taken by John H. Strider, administrator of Eleanor West, is, that it is barred by the statute of limitations. It may be questioned whether the administrator has any interest in the subject matter of this controversy, which would entitle him to interpose exceptions to the appellants' claim. The fund in Court, we have said, has arisen from the sale of Mrs. West's lands, and neither in them, nor in the trust funds arising from their sale, has the administrator, as such, any interest. But if it were otherwise, by the order of the Circuit Court, passed on the 13th day of November 1860, under which Strider was allowed to file his answer, and contest the appellants' account, he was expressly precluded "from interposing the statute of limitations to the same." In any view, therefore, we can take of the case, the claim of the appellants is free from this objection; and it is unnecessary, therefore, to decide whether it might have been successfully made at the proper time. The claim being proved, we are next to inquire whether the fund in Court is chargeable with its payment. By the deed of the first of May 1844, to which we have referred, the land was conveyed to the trustees "for the sole and separate use and benefit of Eleanor West, and her heirs," &c. "with power to her to sell the whole, or any part thereof, with the consent of the trustees, and the proceeds of such sales to be invested for the purposes of the trust, *or disposed of as said Eleanor West shall* direct."

Under this deed there can be no question of the power of Mrs. West to charge her separate estate in the hands of the trustees, with the payment of the appellants' claim. *Cook vs. Husbands et al.*, 11 *Md. Rep.*, 492. It is settled in Maryland that the debts of a *feme covert* cannot be charged upon her separate estate, unless the obligation sought to be enforced, presents upon its face some evidence of the intent to charge the separate estate

with its payment, or there be evidence *aliunde*, tending to prove such intent. *Koontz vs. Nabb*, 16 *Md. Rep.*, 549. We think the evidence disclosed in the record in this case very clearly shows that such was the intent of the parties in this case. Mrs. West was living separate from her husband, the articles furnished to her by the appellants, and charged in the account were necessaries. For years before, similar articles were furnished by the appellants to Mrs. West, and from time to time their accounts were presented to these trustees, and with the approbation of Mrs. West paid out of the trust funds in their hands. This appears from the accounts and vouchers filed by the trustees in this case. This course of dealing continued without any notice to the appellants from Mrs. West, or the trustees, that the claim now presented was not to be charged on the trust fund, in the same manner as others of a like character had been. These facts show the intent of Mrs. West to charge her separate estate with this debt; it is manifest that such was the understanding of the appellants; upon this the credit was given by them, and to deprive them of the benefit of the security upon which they relied, and upon which, by the uniform course of dealing they had a right to rely for payment, would be inequitable, and defeat the plain intent of all the parties.

We think the Circuit Court erred in decreeing against the appellants' claim. In our opinion the appellants were entitled to the decree which was presented by them to the Circuit Court, and is found in the record before us in blank. By that decree the trustees are allowed "a credit of one thousand and sixty-five dollars, and thirty-two cents, to be retained in hand to pay the balance due certain creditors of A. P. West." That part of the decree being assented to by the appellants' solicitors, no question arises upon it for the consideration of this Court.

In order that such decree may be passed by the Circuit Court, the decree appealed from will be reversed and the cause remanded—the cost of the appeal to be paid out of the fund.

*Decree reversed and cause remanded.*

(Decided October 7th 1864.)