JOHN H. FOWLER and JACOB FOWLER, Administrators of ROBERT FOWLER and MANELIA W. HODGES *vs.* PRISCILLA JACOB, by her Husband and next friend, EDWARD JACOB.

*Personal liability of a Married Woman—Sale of Real Estate by a Trustee, under a Decree in Equity—Sec.* 131, *of Art.* 16, *of the Code, applicable to Married Women—Decree in personam against a Married Woman—Power of Married Woman to bind her Separate estate.*

A married woman who purchases real estate at a trustee's sale, made under the sanction and direction of a Court of equity, pays a part of the purchase money, but fails to pay the balance, is personally liable therefor.

Section 131, of Article 16, of the Code, gives to Courts of equity in this State, full power and authority to order a re-sale of any real estate sold by a trustee, appointed by such Court, at the risk of the first purchaser, whenever default is made in any of the terms of the sale; and if at such re-sale the property does not bring what it originally sold for, the Court has authority to pass a decree *in personam* against the first purchaser for the difference. HELD:

That married women who become purchasers of real estate at a trustee's sale, made under the direction of a Court of equity, are included, equally with other persons, within the terms of said section.

A decree *in personam* against a *féme covert*, as purchaser of real estate sold under a decree in equity, to enforce the payment of the balance of the purchase money, means only, that unless by a given time she pays such balance, any of her separate property which she would have the right to pledge in order to pay or secure a debt, may be taken in execution to pay what she owes on her purchase, or that such property is liable therefor.

A married woman has the power to charge her separate property with the payment of her debts, and whether she does so or not, is a question of intent; and this intent may be shown on the face of the obligation creating the debt, or it may be shown *aliunde*.

Fowler and Fowler, Adm'rs, *et al. vs.* Jacob.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

On the 26th of January, 1870, Edward Jacob and wife executed a mortgage to Susan M. Jacob, to secure the payment of a debt of $1,566.00. On the same day he executed to his wife a mortgage on the same property, to secure to her the payment of $2,311.00; and both were recorded at the same time. Susan M. Jacob filed her bill in equity on the 28th of May, 1872, to forclose her mortgage, and to obtain priority over that which had been executed to Mrs. Jacob. Proof was taken, and a decree was passed on the 2d of November, 1872, establishing this priority, and directing a sale to be made, unless the defendants, or one of them, on or before a day indicated, paid, or brought into Court to be paid, to the complainant, the said sum of $1,566.00, with interest, &c. At the second offer of the land, on the 20th of August, 1873, it was bought by Mrs. Jacob; a report was made, and the sale finally ratified by request of all the parties, and the trustee, endorsed on the report, and acknowledged by Jacob and wife before a justice of the peace.

At this stage of the case there were no parties except the complainant and Jacob and wife. The auditor stated an account, in which, after allowing costs, &c., and paying the complainant's claim, there was a balance of $2,010.74 not distributed. The terms of sale were not complied with by giving bond, with sureties, in consequence of an arrangement made between the complainant and Mrs. Jacob and her husband, and Robert Fowler, who held an assignment of $1,000 of Mrs. Jacob's mortgage. On the 21st of August, 1874, the administrators of Fowler, for the first time, came into Court by petition to have payment of their claim out of the fund. On the 23d of October, 1877, Miss Manelia W. Hodges filed a petition, asserting her claim against Jacob, which was allowed in an account of the auditor and order of Court. The case is further stated in the opinion of this Court.

Fowler and Fowler, Adm'rs, *et al. vs.* Jacob.

The cause was argued before ALVEY, C. J., STONE, IRVING, and RITCHIE, J.

*Phil. H. Tuck, James H. Hodges, Frank. H. Stockett,* and *William H. Tuck,* for the appellants.

*Hugh Nelson,* and *James Revell,* for the appellee.

STONE, J., delivered the opinion of the Court:

The precise question to be decided in this case, is whether a married woman who has become the purchaser of property at *trustee's sale,* and who has failed to pay the whole purchase money, can be held personally liable for it. Mrs. Jacob the appellee, a *fême covert,* purchased at a trustee's sale, made by order of a Court of equity, certain real estate lying in Anne Arundel County. The sale was duly ratified by the Court, and Mrs. Jacob took possession of the land, and paid a part of the purchase money. She gave, however, no bond for the balance due upon her purchase, but retained the land in her possession for some eight or nine years. In the meantime a certain Manelia. W. Hodges established a claim and it was ordered to be paid out of the purchase money. Mrs. Jacob having failed to pay the balance of the purchase money, upon the application of the trustee, an order for a re-sale of the land *at the risk of the purchaser* was obtained from the equity Court, and the land was re-sold. At the re-sale, the land did not sell for the amount then due by Mrs. Jacob as first purchaser. The Court then passed an order directing Mrs. Jacob to pay or bring into Court, the difference between the amount she then owed and the amount realized from the re-sale of the land. Subsequently, however, upon the petition of Mrs. Jacob, the Court rescinded so much of the order for re-sale as required the same to be

* Messrs. Phil. H. Tuck and James H. Hodges, did not participate in the argument.

Fowler and Fowler, Adm'rs, *et al. vs.* Jacob.

made at her risk, and also the order requiring her to pay the difference, and from this rescinding order this appeal is taken.

Waiving all the technical and unimportant questions that have been argued, the broad question presented, is the personal liability of a married woman for her purchase made at a trustee's sale under the sanction and direction of a Court of equity. This question has remained up to this time, undecided in this State.

Section 131 of Art. 16, of the Code, gives to the Courts of equity of this State full power and authority to order a re-sale of any *real* estate sold by a trustee, appointed by such Court, at the risk of the first purchaser, whenever default is made in any of the terms of the sale, and if, at such re-sale, the property does not bring what it originally sold for, then the Court has authority to pass a decree against the first purchaser *in personam* for the difference.

The *letter of this law* includes all purchasers at a trustee's sale made under the orders and direction of a Court of equity, and as it is conceded that a married woman has the undoubted right and power to purchase at such a sale, she is certainly included within its literal terms. Before we can exclude her from the operation of the whole of this section we must be satisfied that she was not intended to be subject to what is to her in this case, the objectionable personal liability clause. Either some other existing statute law, or reasons of sound public policy must show that she was so excepted.

This law, it will be observed, applies *exclusively* to sales made by trustees acting under the orders of a Court of equity, and in all such cases the Court itself is considered the vendor. The law has no application to transactions between individuals.

In all such cases of sale under the direction of a Court of equity, there are more persons interested and more interests involved than those of the vendor and vendee. The rights

of a multitude of creditors and conflicting claimants, generally depend on such sale. Such sales being almost universally for the payment of debts, or a division of the proceeds among those entitled. The real and proper vendor, the Court, acting through its agent, the trustee, has no interest except to do full and complete justice to the parties for whose benefit the land is sold. The vendee has no interest but his own to look after. In private sales made by individuals the interests of the vendor and vendee alone are affected.

It being conceded that a *fême covert* has the right to purchase, and that a trustee could not legally refuse her bid, why should she not be compellable to pay the purchase money? To allow a married woman the privilege of bidding for and having any property struck down to her, the sale ratified, and the vendor bound to perform his part of the contract, and then to permit her, at her will and pleasure to escape *personally* from the payment of the purchase money, would be to put a most potent instrument for wrong and fraud in the hands of every *fême covert*. It would enable her to attend any sale, that her caprice might lead her to, and bid over and drive off all *bona fide* and personally responsible bidders, and afterwards keep or throw up the property as she chose, being exempt from all *personal liability*. It would give her the right thus injuriously to affect the rights and interests of innocent third parties. It would do more than this, it would enable her to baffle a Court of equity to some extent, and to defeat its efforts to do speedy justice to the litigants before it. Surely, no reasons resting on sound public policy exist, why we should place such a construction on that section of the law, that we have adverted to. These mischiefs might and would result from a departure from the letter of this section of our law.

There is no statute of this State in conflict with this construction of sec. 131 of Art. 16. On the contrary, there is

one in accord with it, and that is the Act of 1872, ch. 270, which allows a married woman to become personally liable for all and every contract she may make, upon her bond or note jointly with her husband. This Act was in full force and effect at the time of this sale.

It is an old and well settled doctrine of equity, that it will consider, as between the parties, that done which was agreed to be done. Mrs. Jacob, when she became the purchaser at *this sale*, and agreed to its ratification, agreed to comply with all its terms. One of these terms was that she should execute her bonds for the credit payments. This she did not do at the time, and after remaining in possession of the property and receiving its rents and profits, for nearly nine years, declines to do. To such a case, a Court of equity could with great propriety and justice apply that rule and treat her precisely as if she had given her bond or note.

We may well admit all the common law disabilities of a *féme covert*, contended for by the appellee; but even if she did not possess it before, the first section of Art. 45 of the Code recognizes in most unmistakable terms her right to become *a purchaser*. Her right to purchase is an unqualified one, and when *our statute* annexes certain conditions to every purchase made at a certain and limited class of sales, that is trustees' sales made by Courts of equity, it would be a strained construction to exempt her.

But what does the *decree in personam* so much mentioned in the argument mean, and amount to in a case like the present? It means this, and this only, that unless by a given time the *féme covert* pays the amount still due on her purchase, that any separate property of hers which she would have the right to pledge in order to pay or secure a debt, may be taken in execution to pay what she owes on her purchase, or that such property is liable therefor.

While we do not mean to decide,—because that question is in nowise involved in this case—*what property* of the married woman is so liable, yet we may say that the power of a married woman to charge her separate property with the payment of her debts is unquestioned, and whether she does so or not, is a question of *intent.* This intent may be shown on the face of the obligation creating the debt, or it may be shown *aliunde.* In *Jackson, et al. vs. West, et al.,* 22 *Md.,* 71, a leading case, that intent was permitted to be shown entirely by the facts surrounding the case. In that case, Mrs. West had purchased the ordinary family necessaries from the plaintiff, without any specific pledge of her separate property to pay for them. But because she had previously bought from the plaintiff necessaries, and had paid for them out of her separate estate, without objection either by herself or her trustees, the Court held. that such course of dealing was evidence of her *intent,* and held her separate estate responsible, and that the credit was given her by the plaintiff upon that belief.

Now the facts in this case present a case equally as strong, if not stronger, of an implied intent. The existence of a statute making purchasers liable *beyond* a lien on the land bought, and her acceptance of the purchase under these conditions, is, it seems to us, a much more effectual pledge, than a previous course of dealing. If *she* intended to pay at all, she could only pay out of her separate estate, whether that separate estate was the land she had just bought, or other property of hers.

Being therefore of opinion that the 131st section of Art. 16 of the Code, applies equally to married women, purchasers, as to others, we must reverse the order appealed from, and remand the case for further proceedings in conformity to this opinion.

*Order reversed, and*
*case remanded.*

(Decided 19th June, 1884.)