(Decided 12th June, 1889.)

JAMES GALLOWAY, *et al. vs.* WILLIAM H. SHIPLEY, Examiner, &c.

*Married woman—Act of* 1876, *ch.* 399, *sec.* 4, *relating to the Extension of Streets and Avenues in Baltimore County.*

By the fourth section of the Act of 1876, ch. 399, relating to the extension of streets and avenues in Baltimore County, it is provided that application for such extension may be made by "the owner or owners of a majority of front feet of ground bounding and fronting on any portion of said street or avenue as laid off, and including the line of the proposed extension." HELD:

That a married woman could sign such application as owner without her husband uniting with her.

APPEAL from the Circuit Court of Baltimore City.

The appellants filed a bill against the appellee, praying that his proceedings as examiner in the matter of the opening, grading, condemning, and constructing Gorsuch avenue between certain designated points, so far as the same purport or claim to impose any tax or charge against the plaintiffs or their property, might be declared null and void, and for an injunction. The Court below (WRIGHT, J.,) passed a decree dismissing the bill,

and the plaintiffs appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John C. Rose,* and *D'Arcy Paul,* for the appellants.

*Winfield J. Taylor,* and *William A. Fisher,* for the appellee.

STONE, J., delivered the opinion of the Court.

By the fourth section of the Act of 1876, chapter 399, relating to the extension of streets and avenues in Baltimore County, it is provided:

"That whenever it may be desirable to have any street or avenue, which may have been already laid off, extended beyond its present terminus, the owner or owners of a majority of front feet of ground bounding and fronting on any portion of said street or avenue as laid off, and including the line of the proposed extension, may make application to the County Commissioners of Baltimore County, in writing, setting forth the street or avenue that they desire to be extended, and the line, approximate distance, and point of termination of such proposed extension; and when such application is presented, the said County Commissioners shall," &c. And the Act then goes on to prescribe with great minuteness the duty of the County Commissioners in the premises, and making provision for appeal from their action, &c., and also providing for the payment by the property holders of any assessments that might be made on their property to pay the costs of the extension.

In 1887 there was an application in writing made to the County Commissioners of Baltimore County for the extension of Gorsuch avenue, then lying within said

Galloway, *et al. vs.* Shipley.

county. This application was signed by the owners of a majority of the front feet of ground bounding and fronting on said avenue, as laid off, and including the line of the proposed extension. The Commissioners, therefore, proceeded to extend Gorsuch avenue in conformity to the Act of 1876. The appellants, however, did not sign the application for the extension of the avenue, and when the bills for their portion of the expense, as property holders on the avenue, for such extension were presented, they resisted the payment.

The ground upon which they, the appellants, base their contest, is that two of the signers to the written application to the Commissioners, were *married women*, and that their husbands did not unite with them in signing the application, and that, as without the number of front feet of ground owned by these married women, a majority of the front feet was not represented in the application, the whole proceeding was void. In other words that the signature of the owners of a *majority* of front feet upon the avenue was necessary to give the Commissioners *jurisdiction*, and that, as the signature of a married woman, unless coupled with that of her husband, was not a legal signature, the whole subsequent proceedings were null and void.

To this complaint the appellees have interposed various defences, but we shall only notice one which is decisive of the case.

It is conceded that these married women were the *owners* of the front feet they signed for, and are thus certainly within the letter of the statute. The statute says the *owners* must sign, and they were the owners, and did sign. Before we can deprive a married woman, owner, of the right the statute, by its terms, confers on her, in common with other owners, some other statute law, or some reasons based upon sound public policy, must be shown that will warrant us in so doing. This we think the appellants have failed to do.

In the case of *Fowler vs. Jacob,* 62 *Md.*, 326, a married woman became the purchaser at trustee's sale of certain real estate.    She failed to pay the whole purchase money, or give bond.    The land was resold at her wish by the trustee, and on such second sale there was still due a balance of the original purchase money, and for this balance this Court held her liable.    The ground of this decision was that the statute gave her the unqualified right to become a *purchaser* at the trustee's sale, and having that right, she stood in the same relation that any other purchaser did, and incurred the same liabilities.    The Court in that case recognized all the *common law* disabilities of married women, and based their decision upon the ground that the statute gave her the unqualified right to purchase at trustee's sale, and that, as the statute law annexed certain conditions to every such sale, no reasons of sound public policy existed why married women should be excepted from such conditions, and the Court, therefore, held her liable *in personam.*

In the case at bar it is not pretended that there is any statute in conflict with the Act of 1876, but the common law disabilities of married women are invoked in aid of the appellants, and the case of *Hall & Hume vs. Eccleston,* 37 *Md.*, 510, has been much relied on.    But the case at bar presents a very different question from that of the case in 37 *Md.*    The underlying principle in the case before us is the question of taxation.

The extension of streets and avenues to meet the demands of increasing population and business is an absolute necessity in all cities and towns, the population of which is increasing.    It is clearly within the power of the municipal corporations to levy the necessary taxes to pay for these improvements, under such restrictions and conditions as the Legislature may impose.    In order, however, to prevent the municipal authorities from undertaking such extensions, where they are not needed,

the Legislature wisely imposed, as a condition precedent, the request in writing of a majority of the property owners on the line of the proposed extension. Such extensions are presumed to, and do in fact, add to the value of the property along the line, and the only question for the property holders to decide is whether the time has arrived, when the increased value of the property will warrant the increased taxation. We can perceive no sound reason why a married woman owner should not have the privilege of expressing her opinion upon that subject. She does not by signing her assent to such extension, sell or dispose of, or even necessarily incumber, her property. Her property is burdened with the additional taxes, whether she consents or not, provided a majority of the other property holders do consent. If the theory of the appellants was correct, that the act of signing this application should be viewed in the light of an *incumbrance* upon her property, it would be very remarkable that the law would permit other people to fasten such an incumbrance upon the property of a married woman, and yet prevent her from doing it.

The eleventh section of the Act of 1876 relied on by the appellants, does not militate against these views. In providing that the guardian of an infant should sign such an application at his own will and pleasure, the Legislature could not have regarded such signing as *incumbering*, in the common law sense, the property of his ward, but rather as a step taken towards its ultimate improvement. It only meant that an important public improvement should not be arrested or delayed for want of consent on the part of some one capable of acting with discretion.

This eleventh section of the Act deals with *qualified* interests in the property, and for the purpose of expediting the public improvements, treats these interests as absolute and *unqualified*. Thus it permits the tenant for

ninety-nine years to sign the application, although his lease may be on the point of expiration, and, to prevent any question as to the ultimate effect of such signing, declares that such signing shall bind the property in the same manner, that the signing by the owner of the fee would. This is the meaning and object of this section.

Entertaining these views, the decree dismissing the bill must be affirmed.

*Decree affirmed.*